UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN R., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 23 CV 59 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Steven R. appeals the Commissioner of Social Security's decision denying his application for benefits. For the following reasons, plaintiff's motion to reverse or remand the Commissioner's decision [12] is granted, the Commissioner's motion for summary judgment [15] is denied, and the case is remanded for further administrative proceedings.[1]

**Background**

In December 2014, plaintiff applied for supplemental security income, alleging an onset date of January 1, 2013. [11-1] 15. The claim was denied initially, on reconsideration, and after a hearing before an administrative law judge. [*Id.*] 15-23. After the Appeals Council denied review in November 2018, plaintiff appealed to this Court and his case was remanded for further proceedings. *Steven R. v. Saul*, Case No. 19 CV 388, 2020 WL 5630467 (N.D. Ill. Sept. 21, 2020). On remand, the ALJ held a new hearing and, in October 2022, denied the application for benefits. [11-1] 480-93. Plaintiff has again appealed to this Court [1], and the Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [11-1], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge [8].

[11-1] 483. At step two, the ALJ determined that plaintiff has the following severe impairments: headaches, obesity, depression, anxiety, and autism spectrum disorder. [*Id.*]. At step three, the ALJ concluded that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 483-85. Before turning to step four, the ALJ ruled that plaintiff had the residual functional capacity (RFC) to perform light work except that (1) he must avoid concentrated exposures to respiratory irritants, strobing or flashing lights, and noise louder than that which would be expected in an office setting; (2) he must avoid all exposure to unprotected heights; and (3) he could perform no more than simple work that did not entail a specific production quota. [*Id.*] 485-92. At step four, the ALJ held that plaintiff could not perform his past relevant work. [*Id.*] 492. At step five, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform: marker (240,000 jobs), mailroom clerk (120,000 jobs), and electronics worker (240,000 jobs). Accordingly, the ALJ ruled that plaintiff was not disabled.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

Plaintiff argues that the denial of benefits should be reversed because the ALJ (1) did not properly accommodate his limitations in concentration caused by his headaches, (2) misapplied the treating physician rule, and (3) failed to accommodate his moderate limitation in concentrating, persisting, or maintaining pace (CPP). *See* [12] 8-16. The Court agrees that the ALJ did not properly apply the treating physician rule and that a remand for further proceedings is required.

Because plaintiff filed his application before March 27, 2017, *see* [11-1] 15, the ALJ was required to apply the treating-physician rule. That rule "requires ALJs to give controlling weight to the medical opinion of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence." *Peter V. v. Dudek*, Case No. 22-cv-50306, 2025 WL 885997, at *2 (N.D. Ill. Mar. 21, 2025) (internal quotation marks omitted).

2

Plaintiff submitted an opinion from his primary care doctor, William Imlach, who had treated plaintiff for roughly two years. [11-1] 471-73 (Dr. Imlach's June 2017 opinion); *see also* [*id.*] 436-70 (Imlach's treatment notes from April 2015 through January 2016); [*id.*] 471-73 (Imlach's treatment notes from June 2017). According to the ALJ's summary of Dr. Imlach's opinion:

> [T]he claimant's concentration and attention was impacted by his fatigue and pain, and [ ] he had severe limitation in his ability to deal with work stress. He stated that the claimant's Asperberger's syndrome would manifest itself in ways, leading to profound communicative impairments and neurocognitive dysfunction. He asserted that the claimant would sometimes need to lie down at unpredictable intervals during a work shift, and that he was likely to be absent from work more than 3 times per month.

[*Id.*] 489.

The ALJ gave Dr. Imlach's opinion "little weight" because "it is unclear how it was arrived at and what it is based upon." [11-1] 489. The ALJ also determined that the opinion was "inconsistent with [Dr. Imlach's] own examination, which showed that the claimant did not wish to try any other prophylactic or abortive medications." [*Id.*]. The Court concludes that substantial evidence does not support the ALJ's weighing of Dr. Imlach's opinion.

First, it is doubtful that the ALJ even applied the treating-physician rule. Most obviously, the ALJ "'failed to address whether Dr. [Imlach's] medical opinions are supported by medically acceptable clinical and laboratory diagnostic techniques.'" *Sherry C. v. O'Malley*, No. 21 CV 4022, 2024 WL 4278483, at *3 (N.D. Ill. Sept. 24, 2024) (quoting *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009)). The ALJ did remark that it was "unclear" how Dr. Imlach "arrived at" this opinion and "what it is based upon" [11-1], but the Court is left to guess what the ALJ meant by this. Did he mean that he had examined the record and could not determine whether a doctor who had treated a patient for two years had based his opinion about the patient's work-related limitations on acceptable clinical or laboratory techniques? If that was so, the ALJ needed to say more to substantiate his conclusion. *See Sherise K. v. Dudek*, No. 24 C 11199, 2025 WL 1260831, at *2 (N.D. Ill. Apr. 30, 2025) ("The court has to be able to trace the path of the ALJ's reasoning."). Or did the ALJ mean that it was unclear from the face of Dr. Imlach's opinion whether that opinion was supported by acceptable clinical or laboratory technique? That conclusion would be unreasonable, however, because the opinion itself reflects that it was based on "MRI testings," "examinations, subjective and objective findings, and medical expertise." [11-1] 472.

Second, the ALJ's conclusion that Dr. Imlach's opinion was "inconsistent with his own examination" does not have substantial evidentiary support and cannot

3

support a decision to assign the opinion less than controlling weight. The Commissioner argues, *see* [16] 6, that it was reasonable for the ALJ to find an inconsistency between Imlach's opinion and a June 2017 treatment note in which Imlach noted that plaintiff "did not wish to try any other prophylactic or abortive medications." [11-1] 489 (citing [*id.*] 1025). Again, the Court is left to speculate what significance this treatment note had for the ALJ's weighing of Dr. Imlach's opinion. As best the Court can tell, the ALJ apparently concluded that if plaintiff's headaches and Asperger's had really imposed the kind of limitations identified by Dr. Imlach, then plaintiff would have (or should have) been willing to try a new medication. But such a conclusion ignores the reasons plaintiff gave to Dr. Imlach during that same examination for declining a new medication: "previous prophylactic and abortive meds not successful and pt does not wish to try any others." [*Id.*] 1025. If the ALJ was going to discount Dr. Imlach's opinion because it was supposedly inconsistent with plaintiff's refusal to try new medication, the ALJ needed to "consider and address [plaintiff's] reasons for not pursuing treatment that are pertinent to an individual's case and explain how [he] considered the individual's reasons in [his] evaluation of the individual's symptoms." *Jose F. v. Kijakazi*, No. 21 CV 896, 2023 WL 8934938, at *5 (N.D. Ill. Dec. 27, 2023). But the ALJ failed to do so here, thereby undermining any contention that the ALJ reasonably found that Dr. Imlach's opinion was inconsistent with other substantial evidence.

Third, the ALJ did not adequately explain why he concluded that Dr. Imlach's opinion was entitled to little weight. "If an ALJ denies a treating physician's opinion controlling weight, the ALJ still must consider the opinion's persuasiveness after evaluating statutory factors, such as specialization, supportability, and consistency." *Peter V.*, 2025 WL 885997, at *2. An ALJ must give "good reasons" to support the weight he ultimately assigns to a treating source's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). Here, however, the ALJ did not consider Dr. Imlach's role as plaintiff's primary care doctor or the length of their treatment relationship. Nor did he consider the degree to which Dr. Imlach's own treatment notes supported his opinion. *See Charlnette R. v. Dudek*, No. 23-cv-3184, 2025 WL 933840, at *5 (N.D. Ill. Mar. 27, 2025) (remanding where ALJ did not address "if or how his consideration of the other objective medical evidence–namely, the copious treatment notes from [claimant's treater] in the record–led him to discount [treater's] opinions as unsupported"). Finally, the ALJ did not consider that Imlach's opinion about plaintiff's concentration difficulties was consistent with both (1) the state agency's reviewers' shared opinion–which the ALJ gave "great weight" [11-1] 491–that plaintiff was moderately limited in his ability to concentrate for extended period and to complete a workday without interruptions from psychologically based symptoms and to work without an unreasonable number and length of rest periods, *see* [11-1] 66-67, 81-82[3]; and (2) the opinion of plaintiff's

---

[3] The ALJ's handling of plaintiff's CPP limitation will require further attention on remand. In his step three analysis, the ALJ found that plaintiff had a moderate CPP limitation. [11-1] 484. In evaluating the opinion evidence, however, the ALJ gave great weight to the agency

4

treating psychologist, Dr. Laura Schultz, that plaintiff was likely to be off-task for 30% of the workday and could pay attention and concentrate for no more than 90% of the workday. *See* [11-2] 1032-35.

"The treating physician rule was effective at the time of the application, and thus the ALJ should have given controlling weight to Plaintiff's treating [doctor] unless good reasons existed to discount the opinion. The ALJ, however, seemed to simply disagree with [Dr. Imlach's] conclusions, seizing on minor inconsistencies without exploring the significant evidence in the record supporting Plaintiff's allegations that [ ]he suffers from disabling [ ] limitations." *Stephanie H. v. Saul*, No. 19 C 4798, 2021 WL 534659, at *3 (N.D. Ill. Feb. 12, 2021). Accordingly, a remand for further proceedings is required.

## Conclusion

Plaintiff's motion to reverse and remand [12] is granted and defendant's motion for summary judgment [15] is denied. The decision of the Social Security Administration is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: June 30, 2025**

---

reviewers' opinion that plaintiff had a mild CPP limitation. [*Id.*] 491 (citing [*id.*] at 64, 77). In doing so, the ALJ did not seem to recognize that the agency reviewers also opined–perhaps inconsistently–that plaintiff was moderately limited his ability to concentrate for extended period and to complete a workday without interruptions from psychologically based symptoms and to work without an unreasonable number and length of rest periods. [*Id.*] 67, 81. Notably, the agency reviewers' reports did not translate these "checkmark" findings into a narrative explanation of how plaintiff could, despite these moderate CPP limitations, perform simple work over the course of an eight-hour workday. *See* [*id.*]. The ALJ will need to explore this issue in further detail on remand. *See Morgan S. v. Dudek*, No. 22 CV 3116, 2025 WL 1158558, at *2 (N.D. Ill. Apr. 21, 2025) ("An RFC determination that a claimant can perform simple, routine work can accommodate a claimant's moderate limitation in CPP if (1) the ALJ has reasonably relied on the opinion of a medical expert who translates CPP findings into an RFC determination or (2) the RFC adequately accounts for the claimant's demonstrated psychological symptoms.").